IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLOBAL MAINTENANCE, INC. d/b/a CENOVA, INC. | : : : | |
| v. | : : | CIVIL ACTION NO. 23-195 |
| BOEING, et al. | : | |

**McHUGH, J.**                                                                                                                               **June 6, 2023**

### MEMORANDUM

The central issue presented by this case is whether it is lawful for one party to a bundled services contract to instruct the party it selects to provide those services that it may not subcontract a portion of the work to a third party, despite a pre-existing, separate agreement granting that third party the exclusive right to such work.  Plaintiff Cenova is a snow removal contractor that had a contract with Defendant Skookum Contract Services, a facilities manager, granting Cenova the exclusive right to snow removal work that Skookum undertook to provide for Defendant Boeing. Both had previously provided services for Boeing.  When Boeing began soliciting bids for bundled services at its Ridley Park site, Skookum and Cenova provided pricing through multiple rounds of bidding.  But when Boeing ultimately awarded Skookum the contract, despite Boeing's knowledge of Cenova's involvement, it required Skookum to hire a different company for snow removal services.  Cenova's attempts to characterize Boeing's bid specifications as giving rise to an enforceable agreement between them fails, and its contract claim against Boeing will therefore be dismissed.  But Cenova plausibly states a claim against Boeing for tortious interference of its contract with Skookum and a claim for civil conspiracy.  Boeing's pending Motion to Dismiss will therefore be granted in part and denied in part.

I.      **Relevant Background**

Plaintiff Global Maintenance, Inc., d/b/a Cenova, Inc. ("Cenova"), is a Pennsylvania business that provides snow and ice management services for various customers. Am. Compl. ¶¶ 1, 6, ECF 9. At the time of the underlying allegations, Cenova "was, and had been, the current snow removal contractor at Boeing's Ridley Park, Philadelphia site." *Id.* ¶ 8.

In 2019, Defendant Boeing began soliciting bids for a new bundled services contract for the Ridley Park site. In preparation for a bid, Plaintiff Cenova and Defendant Skookum, a facilities service provider, entered a Memorandum of Understanding ("MOU") in which they agreed to work together if Skookum was to be awarded the prime contract. *Id.* ¶ 7. Specifically, the MOU provided that, if Skookum was to win the contract, Cenova would be obligated to perform the snow removal work and Skookum would be obligated to contract Cenova under the agreed upon terms. *Id.* ¶¶ 9, 11; *see* Ex. A to Am. Compl., ECF 9-1. Skookum also agreed not to provide direct or indirect snow removal services for Boeing's Ridley Park site without Cenova as the services provider and to keep any pricing or propriety information confidential. *Id.* ¶¶ 13-13. Cenova notified Boeing of the agreement. Am. Compl. ¶ 14.

As part of the bid solicitation process, Boeing provided Skookum and other facilities contractors "bid specifications." *Id.* ¶¶ 15-16. That document included a map of the Boeing site, an explanation of the responsibilities of the snow removal company, and a "Snow and Ice Removal Plan." *See* Ex. B to Am. Compl., ECF 9-2. The document titled "Snow and Ice Removal Plan" states that "Cenova, Inc. has been chosen as the contractor to provide all snow and ice removal services for the Philadelphia site," and includes Cenova under the heading "Contracted Services." *Id.*

In furtherance of the bidding process, Cenova submitted pricing for its services to Skookum for incorporation into the overall bid and at the reduced rates that Skookum sought. Am. Compl. ¶¶ 17-18. Following Snookum's submission of its bid, Boeing asked Cenova directly to lower its prices again. *Id.* ¶ 19. Cenova again complied. *Id.* ¶ 20. Eventually, Boeing awarded the contract to Skookum, which informed Cenova that it had been approved as the snow removal contractor. *Id.* ¶ 21.

After Boeing awarded Skookum the contract, Boeing then solicited a bid from Sauers Snow Removal for its snow management services. *Id.* ¶ 23. Plaintiff alleges that Boeing and Skookum shared Cenova's pricing with Sauers to obtain a more competitive bid. *Id.* ¶ 24. Boeing subsequently approached Cenova again to modify its pricing accordingly, and Cenova again complied in good faith. *Id.* ¶¶ 25-26. Nonetheless, Boeing directed Skookum to contract with Sauers instead of Cenova for the snow removal management of Ridley Park. *Id.* ¶ 28.

Cenova's pending Amended Complaint advances four claims: (1) breach of contract against Skookum; (2) breach of contract against Boeing; (3) tortious interference against Boeing alone; and (4) civil conspiracy against both Boeing and Skookum. Skookum has filed an Answer, but Boeing moves to dismiss the claims against it under Rule 12(b)(6). ECF 12.

**II.**     **Legal Standard**

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

### III. Discussion

#### A. Breach of Contract

Cenova alleges that Boeing, while soliciting bids for bundled services from various facilities managers including Skookum, used "bid specifications [that] identified Cenova as the agreed upon snow removal contractor." Am. Compl. ¶¶ 15-16; *see* ECF 14-1 at 7. Characterizing this document as a contract, Cenova alleges that Boeing was in breach when, "in violation of its own bid specifications . . . [it] independently solicited a bid" from Cenova's competitor. Am. Compl. ¶ 23. Boeing argues that Cenova's claim fails because the bid specifications are not a contract, and there was thus no contract to breach. I agree and, for the reasons explained below, will dismiss Cenova's breach of contract claim against Boeing.

##### 1. *Cenova cannot establish the existence of a contract.*

To establish a breach of contract claim, a plaintiff must show: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). The formation or existence of a contract requires "(1) the parties' manifestation of a mutual intention to be bound by an agreement; (2) terms that are sufficiently definite so as to be enforceable; and (3) consideration." *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 977 F. Supp. 2d 462, 467 (E.D. Pa. 2013) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 533 (3d Cir. 2009)).

As to the first element of contract formation – mutual assent – "the relevant inquiry is what a reasonable person would understand the intent of parties to be given their objective manifestations." *Ryan v. Temple Univ.*, 535 F. Supp. 3d 356, 364-65 (E.D. Pa. 2021) (Gallagher,

4

J.) (citing *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582-84 (3d Cir. 2009)).  The second element – sufficiently definite terms – requires Pennsylvania courts to look to the Restatement (Second) of Contracts, where the omission of an essential term such as price does not necessarily negate formation "so long as the parties otherwise manifested their mutual assent to the agreement."  *See Ruggiero v. Noncenti*, 556 F. Supp. 3d 512, 522-23 (E.D. Pa. 2021) (Slomsky, J.).  But if there is "no discussion of any essential terms, such as time or manner of performance, price, or consideration, the agreement is too indefinite for a party to reasonably believe that it could be enforceable."  *Id.*; *see Ryan*, 535 F. Supp. 3d at 365 (citing *Am. Eagle Outfitters*, 584 F.3d at 582-84) ("With regards to the terms of an agreement, the parties must articulate the material details of the bargain such that the extent of their obligations is evident on the face of the contract.").  Finally, as to the third element of consideration, "[v]alid consideration exists where each party has suffered a detriment, has done something they were not otherwise bound to do, or promises to perform, or refrain from doing, some act."  *Ryan*, 535 F. Supp. 3d at 365 (citing *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 315 (E.D. Pa. 2020)).

Here, Plaintiff has failed to establish each of the three elements required to demonstrate that the "bid specifications" document constituted a formed contract.  First, there are very few, if any, facts pled that would allow a reasonable person to believe that Boeing intended to be bound by its bid specifications.  Cenova itself affirmatively pled that this document was sent to multiple facilities managers, all of whom were submitting bids to provide bundled services to Boeing, and not directly to Cenova.  *See* Am. Compl. ¶¶ 15-16, 35; *see* ECF 14-1 at 7 ("The Plaintiff has alleged . . . that these documents which comprise Exhibit B were among documents provided by Boeing to the facilities managers bidding to provide 'Bundled Services,' including snow removal.").  There is no allegation that Cenova and Boeing discussed any agreement prior to

Boeing's dissemination of the bid specifications, or that the parties negotiated any of its content. *See Ohama*, 434 F. Supp. 3d at 314-15 (noting that "a month of discussions and negotiations" between the parties, as well as the parties' involvement in "reviewing and revising the terms," evidenced defendant's intent to be bound); *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 668 (3d Cir. 1998) (citing "various letters circulated between plaintiffs and defendants" as evidence of mutual assent); *see also Ruggiero*, 556 F. Supp. 3d at 523 ("Defendant's continuous references to the existence of an agreement . . . further exemplifies mutual assent"). Moreover, the document itself shows no signs of mutual assent, and instead reads as an instruction manual for snow and ice removal at the Ridley Park site. Although the document identifies Cenova as the snow-removal contractor, Cenova fails to plead any facts showing Boeing's agreement to be bound by Cenova's terms.

Further, the alleged contract does not contain sufficiently definite terms or valid consideration. The only "terms" discussed in the bid specifications pertain to Cenova and another facilities contractor – there is no price term, obligation, or other "detriment" assigned to Boeing. And while the absence of a price term is not invariably fatal to the definitiveness of terms, there must be an objectively ascertainable intent to be bound. *See ATACS Corp.*, 155 F.3d at 667 ("[T]he omission of an essential term in a contract, such as price, does not vitiate contract formation *if the parties otherwise manifested their mutual assent* to the agreement and the terms of that agreement are sufficiently definite.") (emphasis added). Especially where there is no evidence of mutual assent, there can be no contract without sufficiently definite terms and consideration, neither of which are found here. I therefore cannot conclude that Cenova established the existence of a contract between itself and Boeing.

6

> *2. Because the bid specifications were submitted to multiple parties, they cannot be characterized as the offer of a contract.*

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that [their] assent to that bargain is invited and will conclude it." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 250 (3d Cir. 2007) (citing Restatement (Second) of Contracts § 24 (Am. L. Inst. 1981)). As discussed above, Boeing provided bid specifications to multiple facilities managers. It certainly did not expect to be instantaneously bound by every facilities manager willing to accept the bid. And as there is no allegation that it provided the specifications directly to Cenova, there was nothing for Cenova itself to accept. Nor can Cenova position itself as the third-party beneficiary of a contract between Boeing and Skookum. *See Ribarchak v. Mun. Auth. of City of Monongahela*, 44 A.3d 706, 709 (Pa. Commw. Ct. 2012). I therefore reject the proposition that circulation of the bid specifications constituted an offer needing only acceptance to form a binding contract.

> *3. Cenova cannot now assert an implied contract claim that is not pled in its Amended Complaint.*

Finally, Cenova cannot repackage its claim as one for breach of an implied contract. In its response memorandum, Cenova argues that even if the bid specifications are not found to be an express contract, an implied-in-fact contract existed that Boeing violated. But Cenova did not plead a claim for breach of an implied-in-fact contract – Cenova's allegations establish that its breach-of-contract theory rests on the existence of an express contract in the bid specifications. *See* Am. Compl. ¶¶ 34-37. And a claim for breach of an implied-in-fact contract cannot be added in response when it did not exist in the Complaint. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 n.1 (3d Cir. 1997) ("[W]e will not read causes of action into a complaint when they are not present."); *Children's Place, Inc. v. Great Am. Ins. Co.*, No. 18-11963, 2021 WL 6932533, at *8

(D.N.J. Sept. 28, 2021) (explaining that a court may not address a claim for breach of implied-in-fact contract where complaint only stated claim for breach of express contract).  I therefore will not consider the merits of this argument.

### B. Tortious Interference

Plaintiff next claims that Boeing tortiously interfered in its contract with Skookum.  Under Pennsylvania law, a claim for tortious interference requires a showing that: "(1) a contractual or prospective contractual relationship existed between plaintiff and a third party;[1] (2) defendant took purposeful action, intended to harm that relationship; (3) that no privilege or justification applies to the harmful action; and (4) damages resulted from the defendant's conduct."  *Intervest Fin. Servs., Inc. v. S.G. Cowen Sec. Corp.*, 206 F. Supp. 2d 702, 721 (E.D. Pa. 2002) (citing *Remick v. Manfredy*, 238 F.3d 248, 263 (3d Cir. 2001)), *aff'd sub nom. InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144 (3d Cir. 2003).

Boeing argues that Cenova's claim fails because it did not act with the requisite purpose or intent to harm Cenova.  But "an actor has the requisite purpose when he is aware that 'interference is certain or substantially certain to occur as a result of his action.'"  *See Sandoz Inc. v. Lannett Co., Inc.*, No. 20-3538, 2020 WL 7695960, at *2 (E.D. Pa. Dec. 28, 2020) (McHugh, J.) (citing Restatement (Second) of Torts § 766 cmt. j (Am. L. Inst. 1979)).  Here, Cenova alleges that it notified Boeing of its contract with Skookum, in which Skookum agreed "not to provide direct or indirect snow removal services for Boeing's Ridley Park, Philadelphia site without Cenova as the service provider."  Am. Compl. ¶¶ 12, 14.  Taking Cenova's factual allegations as true, Boeing knew of Cenova and Skookum's contractual relationship and still "directed" Skookum to contract

---

[1] Because Defendant raises no challenge to Plaintiff's ability to establish the first element of the claim, I will assume for this opinion that a valid contract existed between Plaintiff Cenova and Defendant Skookum.

with Sauers instead.  These allegations are sufficient to establish that Boeing was "aware that 'interference [was] certain . . . to occur as a result of [its] action." *Sandoz Inc.*, 2020 WL 7695960, at *2; *see also Acclaim Sys., Inc. v. Infosys, Ltd.*, No. 13-7336, 2015 WL 4257463, at *4 (E.D. Pa. Jul. 14, 2015) (denying a motion to dismiss for tortious interference when defendant was aware of valid non-compete agreements and caused plaintiff's employees to breach these agreements anyways).

Boeing mounts a more convincing, though ultimately unsuccessful, argument as to Cenova's showing under factor three.  Plaintiffs in Pennsylvania must demonstrate the lack of privilege or justification as part of the prima facie case for tortious interference.  *See Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471, 471 n.7 (Pa. 1979); *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 214 (3d Cir. 2009).  "What is or is not privileged conduct in a given situation is not susceptible of precise definition," but courts look to see whether a defendant's actions comport with "the 'rules of the game' which society has adopted." *Glenn v. Point Park Coll.*, 272 A.2d 895, 899 (Pa. 1971) (citations omitted).  To make this determination, courts consider the following factors, listed in Restatement (Second) of Torts § 767: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.  *See Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*, 150 A.3d 957, 966 (Pa. Super. Ct. 2016); *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 663 (3d Cir. 1993).

The inquiry for lack of justification or privilege focuses on whether the defendant's actions "constitute normal behavior" in the course of its regular business.  *See East Rockhill Twp v.*

*Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 503 (E.D. Pa. 2019) (McHugh, J.). For example, Pennsylvania law recognizes that, "in the course of competition," a business may interfere with another business's contractual relationships. *See Acumed LLC*, 561 F.3d at 215. The concern in a tortious interference claim, though, is whether the actor employed "wrongful means" in doing so, such that their conduct was improper. *Id.*; *see BP Env't Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 409 (E.D. Pa. 2013) (explaining that plaintiff must show that defendant's actions "amounted to more than mere competition"). Necessarily, questions of propriety in this context "are laden with subjective value judgments" and "will rarely be answerable as a matter of law." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 384 (3d Cir. 2016). A court's decision "therefore depends upon a judgment and choice of values." Restatement (Second) of Torts § 767 cmt. b (Am. Law. Inst. 1975).

In this case, whether Plaintiff's claim for tortious interference survives dismissal is a close call. Cenova alleges that Boeing knew of an exclusive relationship between Cenova and Skookum and nonetheless directed Skookum to hire a different snow removal contractor, despite Cenova's efforts to lower its prices when requested and remain competitive. Whether Boeing's action amounts to conduct without justification is a normative, value-laden judgment. When a close call such as this relies on fact-specific evaluation, the appropriate course is to allow discovery to proceed. I will therefore deny Defendant's motion.

### C. Civil Conspiracy

Lastly, Plaintiff brings a claim for civil conspiracy against Skookum and Boeing for acting in concert to interfere with Skookum and Cenova's contract. To state a cause of action for civil conspiracy, Cenova must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;

10

(2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (1997)). An "actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999)). In addition, "[p]roof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 735-36 (E.D. Pa. 2014) (Buckwalter, J.) (quoting *Thompson Coal*, 412 A.2d at 472).

Defendant argues that even if the tortious interference claim survives, Plaintiff's civil conspiracy claim must be dismissed because it cannot as a matter of law assert a claim for tortious interference against Skookum when it is also suing Skookum for breach of contract, leaving Plaintiff without a second entity to serve as the co-conspirator with Boeing. *See* ECF 12-1 at 22. It predicates this argument on the gist of action doctrine as applied in *Canfield v. Statoil USA Onshore Props. Inc.*, No. 16-0085, 2017 WL 1078184, at *26-27 (M.D. Pa. Mar. 22, 2017), where the court reasoned that a plaintiff who "is precluded from bringing [a] tortious interference claim . . . is precluded from bringing the related, tort-based civil conspiracy claim." But a plaintiff remains the master of its complaint and "need not establish an underlying tort against each co-conspirator." *Church Mut. Ins. Co. v. All. Adjustment Grp.*, No. 15-461, 2016 WL 3762713, at *6 (E.D. Pa. July 11, 2016) (Sanchez, J.). Only Boeing has been sued for tortious interference; it is not a party to contract nor does the conduct challenged by Plaintiff allegedly fall within the scope of the contract. *See Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr*, 26 F. Supp. 3d

11

376, 405-07 (E.D. Pa 2014). Because Plaintiff has not directly asserted a tortious interference claim against Skookum, the gist of the action doctrine is not implicated.

Boeing's strongest argument for dismissal of the conspiracy count is that Plaintiff has failed to adequately plead malice. While Cenova maintains that Boeing's conduct was inherently malicious for interfering with its exclusive contract with Skookum, Boeing contends that its actions were "entirely consistent with ordinary business practice and thus 'negate[] a finding of malice.'" ECF 12-1 at 22; *see, e.g., Simply Snackin, Inc. v. S-L Distributors*, No. 17-0381, 2017 WL 6039734, at *7 (M.D. Pa. Dec. 6, 2017) (citations omitted). The lead Pennsylvania case on civil conspiracy is *Thompson Coal*, 412 A.2d at 472, and there are divergent views regarding its requirement of malice.[2] Some courts have required that, to find malice, "the sole purpose of the conspiracy" must be to injure the plaintiff. *See e.g.*, *Festa v. Jordan*, 803 F. Supp. 2d 319, 327 (M.D. Pa. 2011). But even judges who once adhered to that standard have evolved in their views. *See Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 558 (E.D. Pa. 2018) (Rufe, J.) ("The court [in *Thompson Coal*] does not hold that a defendant's interest in economic gain would, in itself, justify or negate specific intent to cause injury, particularly if the intended means for achieving such gain were unlawful or illegitimate."); *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 454 n.4 (E.D. Pa. 2014) (Restrepo, J.) ("*Thompson* does not address whether defendants may be liable if they act with mixed motives."). I am persuaded that the better view comes from these cases.

With that understanding, I conclude that Boeing's potential interest in more competitive pricing does not necessarily negate a finding of malice, especially where Cenova repeatedly

---

[2] *See PDC Machines Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 WL 3008531, at *5 (E.D. Pa. June 15, 2018) (Sanchez, J.) (explaining the different interpretations of *Thompson Coal*'s malice requirement).

showed a willingness to lower its prices to meet Boeing and Skookum's needs. *See* Am. Compl. ¶¶ 18-20, 25-26. Despite Cenova's compliance with several pricing-reduction requests, Boeing still directed Skookum to hire a different service provider, even when it was clear that Cenova would be impacted. Thus, although the Complaint is relatively sparse on the issue of malice, there are sufficient facts pled demonstrating a joint effort to undermine Cenova's contract even when Cenova was more than willing to lower its costs. I therefore find that Plaintiff has stated a plausible claim for civil conspiracy.

**IV.     Conclusion**

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. An appropriate order follows.

      /s/ Gerald Austin McHugh  
United States District Judge